FOR THE

## COUNTY OF CHITTENDEN.

DECEMBER TERM, 1847.

---

PRESENT,

Hon. STEPHEN ROYCE, CHIEF JUDGE,
Hon. MILO L. BENNETT,
Hon. DANIEL KELLOGG, } ASSISTANT JUDGES.
Hon. HILAND HALL,

---

## COLE & ROBINSON v. KERR & NORTON.

There is no implied contract, upon the sale of personal property, that the vendee shall pay the vendor for any services, in relation to the property, rendered previous to the completion of the sale by delivery.

The plaintiffs sold to the defendants the wool lying unsacked in three rooms, to be paid for upon delivery, the quantity to be ascertained by weighing, but without any *express* contract as to who should be at the expense of sacking; the plaintiffs sacked the wool in sacks furnished by the defendants and then caused it to be weighed and shipped to the defendants; and it was held, that, as the sacking preceded the delivery of the wool, the law would not *imply* a contract, on the part of the defendants, to pay the plaintiffs for the sacking.

BOOK ACCOUNT. The plaintiffs sold to the defendants, at Burlington, a quantity of wool, and signed the following memorandum,—
"We have this day sold Messrs. John Kerr & Co. the wool in three

Cole et al. v. Kerr et al.

rooms, and shown Mr. Kerr this day, in all supposed to be 40,000 lbs., at forty and one half cents per lb.; the sale is for cash, or sight drafts;" and the defendants signed a memorandum expressing their assent to the same. The wool was sacked by the plaintiffs, in sacks furnished by the defendants, and was then weighed, amounting in fact to 37,893 pounds, and was shipped to the defendants; and the only question made in the case, in the supreme court, was in reference to the plaintiffs' charge for sacking the wool, amounting to $15,75. The defendants introduced evidence before the auditors, for the purpose of proving a custom among wool dealers in Burlington and its vicinity, that, when wool is sold as in the present case, the vendor shall sack it at his own expense; and one of the defendants was examined as a witness upon this point. The auditors reported, that such sales of wool at second hand are not very common, and that, when made, the sacking, in a large majority of the cases, is made matter of special agreement; but that, in the absence of any such agreement, the custom generally, though not universally, is for the vendor to sack the wool at his own expense. The auditors referred the question to the court, whether, upon these facts, the plaintiffs were entitled to recover. The county court rendered judgment for the plaintiffs to recover the amount of their charge. Exceptions by defendants.

*Kasson & Buckley* for defendants.

1. The auditors have found, that there was no express agreement, on the part of the defendants, to pay for sacking the wool; and we insist that the usage, as found, is sufficient to repel any finding of an implied assumpsit. *Blin* v. *Mayo et al.*, 10 Vt. 56. *Boorman* v. *Jenkins*, 12 Wend. 569, 576. Story on Cont. § 506. *Jones* v. *Warner*, 11 Conn. 47.

2. But if the case stood upon the mere fact of the contract made, we contend that it was the duty of the vendors to pack and weigh the wool and ascertain the price. Until then the defendants could not pay for the wool, nor did the property vest in them. *Ward* v. *Shaw*, 7 Wend. 404. *Zagury* v. *Furnell*, 2 Camp. 240, 242 (n.) *Hanson* v. *Meyer*, 6 East 614. Story on Cont. § 504. Chit. on Cont. 112. *Simmons* v. *Swift*, 5 B. & C. 857, [12 E. C. L. 388.] *McDonald* v. *Hewitt*, 15 Johns. 349. *Davis* v. *Hill*, 3 N. H. 382.

*A. Peck* and *Smalley & Phelps* for plaintiffs.

The wool was sold absolutely, and a written memorandum, or statement of sale, executed by both parties. It was not a *contract to sell*, but a statement of an absolute sale, executed and completed. The wool became absolutely the property of the defendants, from the time of the sale, where it lay. The plaintiffs were under no obligation to deliver it, otherwise than to permit the defendants to take it away; and if they were, they certainly were not bound to sack it. The objection to the parol evidence of usage is, that it goes to vary and in effect to add a new clause to the written agreement. By the agreement the plaintiffs convey the wool to the defendants where it lies, for a certain price; by the parol evidence they are made to agree, for the same price, to sack it at their own expense after sale. It will be found, upon examination, that the cases, in which such evidence has been received, are comprised in two classes;—1, Where terms of ambiguous or uncertain meaning have occurred in a contract, and evidence of usage has been received to explain them;—2, Where an established custom exists as to the subject matter of a written contract, with reference to which the parties may be presumed to have contracted, and evidence of the custom has been admitted to show the intention of the parties as to particulars not expressed in, or reasonably to be implied from, the contract. If the evidence offered in this case is admissible, it must be upon the latter ground. And in regard to all that class of cases, no principle will be found better settled, than that such evidence is never admissible, either to alter the rule of law upon any given state of facts, or to alter a written contract in any particular which is expressed in, or can be implied from, the contract. 1 Phil. Ev. 557. *Yates* v. *Pym*, 6 Taunt. 448, [1 E. C. L. 446.] *Cutler* v. *Powell*, 6 T. R. 320. *Allen* v. *Dykers et al.*, 3 Hill 593. *Frith* v. *Barker*, 2 Johns. 327. *Thompson* v. *Ashton*, 14 Johns. 316. 2 Steph. N. P. 154. 1 Smith's Leading Cas. 413. *Barber* v. *Brace*, 3 Conn. 9. It is obvious, that this case comes under both these exceptions.

But if the evidence were admissible, the established principle is, that a usage of this kind must be shown to be universal, notorious, long continued and unvaried among the class or in the business where it is claimed to exist; and that it must be shown either to have been actually known to the party sought to be charged, or to

be so notorious and well established, as to authorize a presumption, that the parties contracted with reference to it.   Steph. N. P. 1547. *Stephens* v. *Reeves,* 9 Pick. 198.   *Baxter* v. *Rodman,* 3 Pick. 435. *Peirce* v. *Butler,* 14 Mass. 303.   *Haven* v. *Wentworth,* 2 N. H. 93. *Barber* v. *Brace,* 3 Conn. 9.   *Wood* v. *Hickok,* 2 Wend. 501, *Wood* v. *Wood,* 1 C. & P. 59, [11 E. C. L. 312.]   The report of the auditors, instead of establishing a usage of this character, shows conclusively that none such existed.

The opinion of the court was delivered by

HALL, J.   The whole controversy in this case relates to a charge in the plaintiffs' account of $15,75, for sacking a quantity of wool sold to the defendants by the plaintiffs, which charge the auditors disallowed on the strength of a usage, shown before them, for the seller *generally,* though not *universally,* to sack wool at his own expense, the buyer furnishing sacks,—one of the defendants being admitted to testify in regard to the usage.

Without deciding whether the defendant was competent to prove a usage, or determining that the usage found was sufficient to justify the disallowance of the charge, we are of opinion that the legal effect of the contract, in connection with the other facts found by the auditors, was such as to excuse the defendants from liability.

No principle of law is better settled, than that a contract of sale, whatever may be its terms, is incomplete, until there has been a delivery of the goods, either actual, or constructive.   There could have been no constructive delivery, in this case, at the time of the making of the contract, because payment was not then made, and because, also, the quantity of the wool remained to be ascertained, before the sum to be paid could be known.   Until the quantity of wool was ascertained by weighing, the property remained in the plaintiffs' rooms and was at their risk.   *Hanson* v. *Meyer,* 6 East 614.   *Ward* v. *Shaw,* 7 Wend. 404.   Chitty on Cont. 376.

It was the business of the plaintiffs, the vendors, to complete the sale by the delivery of the wool; and such delivery was not in point of fact made, until after the wool was sacked,—the sacking having preceded the weighing.   Until the weighing the duty of the vendors, in regard to the sale, was not perfected.   It is not intended to say, that the plaintiffs could have taken no other mode to deliver the

wool, than that which they adopted. Possibly they might have completed a delivery by weighing the wool in fleeces and setting it apart for the vendees,—notifying them of what had been done. But the plaintiffs took no such course. They elected to pack the wool in the sacks of the defendants; and having done so, in the absence of any express contract of the defendants to pay for services preceding the delivery, (which express contract the report negatives) we think nothing can be recovered for such services.

The result is, that the judgment of the county court is reversed, and judgment rendered for the defendants.